**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Karen Boddie,

    Plaintiff,                           Case No. 2:12–cv–158

    v.                                 Judge Michael H. Watson

PNC Bank, NA, *et al*.

    Defendants.

## OPINION AND ORDER

Karen Boddie ("Plaintiff") sues PNC Bank, NA ("PNC" or "Defendant") for emotional distress caused by alleged discrimination she suffered when attempting to make a transaction at Defendant's Bexley branch.  Defendant moves to dismiss Plaintiff's Complaint without prejudice for lack of standing.  Mot. Dismiss, ECF No. 39.  For the following reasons, the Court denies Defendant's motion.

### I.    FACTS

Plaintiff alleges the following facts.  Plaintiff is a resident of Franklin County, Ohio and is African American.  Defendant is a bank that is owned by Defendant PNC Financial Services Group, Inc. ("PNC Financial").  PNC Bank operates branches located at 1040 Mt. Vernon Avenue, Columbus, Ohio ("Lincoln branch") and at 2954 East Main Street, Columbus, Ohio ("Bexley branch").

On July 26, 2011, Plaintiff deposited a check in the amount of $54,300.17 into a business account which she established at the Lincoln branch.  About four days later, Plaintiff went to the Bexley branch and tried to make a cash withdrawal of $6,000 and requested that $10,000 be transferred to her personal account.

Employees at the Bexley branch refused and stated the branch did not have the funds to honor Plaintiff's request.  Instead, they told Plaintiff to go to the Lincoln branch, where she was known to the employees.  As an alternative, the Bexley branch offered to give Plaintiff $1,000 in cash and transfer $14,000 to her personal account.  The Bexley branch telephoned the Lincoln branch, and the Lincoln branch suggested the Bexley branch honor Plaintiff's request and stated there were sufficient funds to cover the request.  The Bexley branch still refused to make the transaction.

Plaintiff challenged the Bexley branch's refusal to make the transfer and withdrawal, and the branch eventually called the Bexley Police.  The stated reason for calling the police was that Plaintiff was "'threatening,' placing the safety of PNC Bexley personnel in jeopardy, and/or attempting to engage in a business bank account scam."  Amend. Compl. ¶ 10, ECF No. 15.

Plaintiff avers the Bexley branch's refusal to honor her request, the claim of insufficient funds as pretext for its refusal, and the calling of the Bexley Police were each racially motivated actions.  Further, Plaintiff alleges PNC Bank erased video recordings of Plaintiff's interaction at the Bexley branch.

## II.    Procedural History

Plaintiff sued PNC Bank and PNC Financial and included the following eleven counts in her Amended Complaint: (1) denial of her right to make and enforce contracts under 42 U.S.C. § 1981; (2) denial of her right to public accommodations under 42 U.S.C. § 2000a; (3) violation of Title 12, Chapter 1304 of the Ohio Revised Code; (4) defamation; (5) negligent infliction of emotional distress; (6) conversion; (7) punitive damages; (8) tortious misconduct; (9) vicarious liability; (10) joint liability; and (11) interference with or destruction of evidence.

On July 26, 2012, Defendants filed a joint motion for partial judgment on the pleadings, arguing Counts One through Ten should be dismissed.  Mot., ECF No. 20.  On August 8, 2012, the parties filed a stipulation of partial dismissal. Stip. Partial Dismiss, ECF No. 22.  All of Plaintiff's claims against PNC Financial were dismissed without prejudice.  Count Two was dismissed with prejudice as to PNC Bank, and Count Ten was dismissed without prejudice as to PNC Bank. Thereafter, Plaintiff filed her response to Defendants' motion for judgment on the pleadings, abandoning her claim in Count Six.  Resp. 4, ECF No. 23.  Plaintiff otherwise opposed Defendants' motion.  Thus, at the end of that round of briefing, Plaintiff's only remaining claims were counts 1, 3, 4, 5, 7, 8, 9 and 11 against PNC Bank.

On November 5, 2012, PNC Bank moved to dismiss Plaintiff's remaining claims without prejudice for lack of standing.  PNC Bank argues Plaintiff is a

debtor in an ongoing Chapter 13 bankruptcy and therefore cannot pursue these claims for her own personal benefit. This Opinion and Order addresses only Defendant's motion to dismiss for lack of standing.

### III.  ANALYSIS

Defendant argues Plaintiff lacks standing to bring this lawsuit because she purports to bring the lawsuit on her own behalf. Defendant argues Plaintiff cannot do so because she is the debtor in an open Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Southern District of Ohio, and the confirmed plan in that case states that future income shall be submitted to the supervision and control of the bankruptcy trustee. In addition, Defendant asserts Plaintiff was required to list her personal property, including claims such as this suit, on a schedule of personal property ("Schedule B") and a Statement of Financial Affairs. Defendant also contends Plaintiff filled out the Schedule B and amended it several times and also filled out the Statement of Financial Affairs but failed to disclose this lawsuit on either form. Indeed, Defendant states that at the time Defendant filed its motion to dismiss, Plaintiff had not notified the bankruptcy court of this suit or this Court of the bankruptcy proceeding. For the following reasons, the Court agrees Plaintiff cannot bring suit for her personal benefit but declines to dismiss because Plaintiff may bring suit on behalf of the estate.

The first issue is whether a recovery would be part of the bankruptcy estate. "The issue of rights in property acquired after confirmation of the chapter 13 plan is an issue which has troubled a number of courts in recent years." *U.S.*

*v. Harchar*, 371 B.R. 254, 264 (N.D. Ohio 2007) (quotation omitted).  The Sixth

Circuit has not ruled on this issue yet.  As the *Harchar* court explains, the

confusion stems from a perceived contradiction between § 1306 and § 1327 of

Title 11 of the United States Code.

Section 1306 states that the post-petition property of an estate includes all

interest in property[1] that the debtor acquires after the case commences but

before it is closed, dismissed, or converted to a Chapter 7, 11, or 12 case.  11

U.S.C. §§ 1306(a)(1), *see also* 541(a).  Section 1327, on the other hand, states

that "[e]xcept as otherwise provided in the plan or the order confirming the plan,

the confirmation of a plan vests all of the property of the estate in the debtor."  11

U.S.C. § 1327(b).

The *Harcher* court explains:

> Courts have perceived a contradiction in that Section 1306 provides
> that earnings and property are property of the estate until the case is
> closed, dismissed or converted, while plan confirmation occurs
> before any of these events and "vests all of the property of the
> estate in the debtor" under Section 1327. Courts have essentially
> reached three different conclusions as to how these provisions
> interact, each with its own justifications and variants. The first
> approach focuses on Section 1327 vesting "all of the property of the
> estate in the debtor" and concludes that the estate extinguishes at
> confirmation of the chapter 13 plan. *See, e.g., In re Mason,* 45 B.R.
> 498, 500–01 (Bankr. D.Or.1984) ("Post-confirmation creditors may
> deal with the debtor as if no bankruptcy case were pending"); *In re
> Petruccelli,* 113 B.R. at 17 (explaining that revesting of all of the
> property of the estate occurs upon confirmation). These courts
> reason that this approach serves the bankruptcy code's purpose of

---

[1] "It is well established that the 'interests of a debtor in property include causes of
action.'" *In re Wirmel,* 134 B.R. 258 at n. 1 (Bankr. S.D. Ohio 1991) (quoting *Bauer v.
Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir. 1998)).

rehabilitating the debtor and preventing the debtor from becoming a "credit pariah." *In re Toth,* 193 B.R. 992, 997 (Bankr.D.Ga.1996); *In re Petruccelli,* 113 B.R. at 16.

The second approach, which has been adopted by a large number of courts in recent years, holds that all property or earnings acquired after confirmation remains with the estate. These courts argue that their approach harmonizes Sections 1327 and 1306 by giving effect to the requirement that property continues to enter the estate until the case is closed, dismissed or converted. Some courts look to the language of Section 1327 and explain that "vesting" only addresses property that existed at the time of plan confirmation. *See, e.g., Barbosa,* 235 F.3d at 36–37 (holding that property of the estate at the time of confirmation vests in the debtors but the "Debtors' regular income and post-petition assets" remain with the estate); *Holden,* 236 B.R. at 161 (same); *In re Reynard,* 250 B.R. 241, 247 (Bankr. E.D. Va. 2000) (same); *In re Rangel,* 233 B.R. 191, 198 (Bankr. D. Mass. 1999) (same); *In re Kolenda,* 212 B.R. 851, 855 (W.D. Mich. 1997) (same); *In re Fisher,* 203 B.R. 958, 964 (N.D. Ill. 1997) (same). Other courts give "vesting" a more limited meaning of something less than full existing property rights for the debtor. *See, e.g., Woodard v. Taco Bueno Rests., Inc.,* 2006 WL 3542693, *9, 2006 U.S. Dist. LEXIS 89135, *26–27 (N.D. Tex. 2006) (explaining that the "vesting" of Section 1327 only provides a future right to the property which ripens when the chapter 13 plan is completed); *In re Brensing* 337 B.R. 376, 383–84 (Bankr. D. Kan. 2006) (giving "vests" a limited meaning of possession). The Courts adopting either version of the second approach reason that this approach serves the bankruptcy code's purposes of protecting assets and ensuring payment to creditors. *See Woodard,* 2006 WL 3542693, *9–10, 2006 U.S. Dist. LEXIS 89135, *28–29 (explaining the congressional intent that the debtor would repay debtors during the chapter 13 period); *In re Fisher,* 203 B.R. at 963 (stating a desire to avoid any post-confirmation windfall to the debtor).

A third approach . . . focuses on the plan itself in determining whether after-acquired property is property of the estate or the debtor. These courts ask whether post-confirmation property and earnings are "necessary" for administration of the plan. *See Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333, 1340 (11th Cir. 2000) (explaining that "after confirmation, only the amount required for the plan payments remained property of the estate"); *In re Heath,* 115 F.3d 521, 524 (7th Cir.1997) (providing to the estate "only so much

of the income (or her other property) as necessary to the fulfillment of the plan"); *In re Leavell,* 190 B.R. 536, 540 (Bankr. E.D. Va.1995) (explaining that "earnings acquired post-confirmation and necessary to implement the Chapter 13 plan remains property of the estate unless the plan states otherwise"); *In re Ziegler,* 136 B.R. 497, 502 (Bankr. N.D. Ill. 1992) (holding that postconfirmation property becomes property of the estate as needed to fund the plan). Only property and earnings necessary to fund the plan are property of the estate while other property is property of the debtor. *Heath,* 115 F.3d at 524; *Ziegler,* 136 B.R. at 502; *see also Muse v. Accord Human Resources, Inc.,* 129 F. App'x 487, 489 (11th Cir. Apr. 15, 2005) (holding that because "there was no assertion that those assets were necessary to meet the terms of the bankruptcy plan ... [the assets were] not part of the bankruptcy estate").

*Harchar,* 371 B.R. at 264–66. The Court agrees with *Harchar* and the majority of courts to address the issue that "property acquired after confirmation of the chapter 13 plan is property of the estate." *Id.* at 268; *see also Rainey v. United Parcel Serv., Inc.,* 466 F. App'x 542, (7th Cir. 2012) ("A Chapter 13 estate encompasses all property, including legal claims, acquired after the petition is filed and before the case is closed."); *In re Waldron,* 536 F.3d 1239, 1242–43 (11th Cir. 2008); *Barbosa v. Solomon,* 235 F.3d 31, 37 (1st Cir. 2000); *In re Kolenda,* 212 B.R. 851, 853–55 (W.D. Mich. 1997). Accordingly, any recovery in this case would be property of the bankruptcy estate.

The next issue is whether Plaintiff, as debtor, may bring this cause of action on behalf of the estate. "The Sixth Circuit is not one of the circuit courts that has addressed whether a Chapter 13 debtor has standing to pursue causes of action belonging to the bankruptcy estate." *In re Simmerman,* 463 B.R. 47, 57 (Bankr. S.D. Ohio 2011). Thus, this issue is also unsettled in this circuit.

Some courts within the Sixth Circuit have found only the bankruptcy trustee has standing to bring claims belonging to the bankruptcy estate.  *See, e.g., Scott v. The Dress Barn, Inc.*, No. 04–1298–T–AN, 2006 WL 962534, \*2 (W.D. Tenn. April 12, 2006).  Others have found a Chapter 13 debtor may bring a claim on behalf of the estate.  *See, e.g., In re Dickson*, 427 B.R. 399, 404–06 (6th Cir. BAP 2010) (finding Chapter 13 debtor had standing to bring avoidance action); *Johnson v. Interstate Brands Corp.*, No. 07-2227 B., 2008 WL 152895, \*6 (W.D. Tenn. Jan. 14, 2008); *Paris v. Sansom*, No. 1:06–cv–98, 2007 WL 1345368, \*5 (E.D. Tenn. May 7, 2007).  In addition to the courts within the Sixth Circuit, the five United States Courts of Appeals to consider the issue have held a Chapter 13 debtor may bring claims in their own names on behalf of the estate. *Smith v. Rockett*, 522 F.3d 1080, 1082 (10th Cir. 2008); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004); *Cable v. Ivy Tech State College*, 200 F.3d 467, 472–74 (7th Cir. 1999); *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515–16 (2nd Cir. 1998); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1209 n.2 (3rd Cir. 1992).

This Court has held that "a chapter 13 debtor is the proper representative of the estate for litigation purposes, although it would appear to be more accurate to state that a debtor may exercise his power to sue and be sued concurrently with the Trustee." *In re Wirmel*, 134 B.R. at 260 (Bankr. S.D. Ohio 1991); *Smith v. ABN AMBRO Mortg. Grp., Inc.*, No. 1:06–cv–45, 2007 WL 950334, \*6 (S.D. Ohio Mar. 27, 2007).

Nonetheless, "pursuant to § 1325(c), after confirmation of a plan, the [Bankruptcy] Court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee for disbursement to creditors. Thus, to the extent a debtor can maximize his property by pursuing litigation, creditors are assured of receiving their appropriate share of any recovery realized prior to the completion of the plan." *In re Wirmel*, 134 B.R. at 260. Accordingly, Plaintiff may bring this cause of action in her own name on behalf of the estate, but the bankruptcy court should be aware of the case and have the opportunity to order Plaintiff to direct any proceeds to the trustee for disbursement to creditors. Indeed, Plaintiff does not argue that she may bring suit on her own behalf for her personal benefit; she argues only that she is bringing suit on behalf of the estate.

To that end, Plaintiff asserts in one sentence in her memorandum in opposition that the pursuit of her claim is for the benefit of her estate. Resp. 5, ECF No. 45. However, the Court is not convinced Plaintiff is bringing the case as a representative of the estate. First, Plaintiff filed the case in her own name almost a year ago and did not specify she was suing on behalf of the estate. Furthermore, upon filing the lawsuit, Plaintiff did not amend her Schedule B to include the lawsuit, suggesting she was not bringing the suit on behalf of the

estate.[2]  Second, Plaintiff has never indicated to this Court that she is suing on behalf of the estate nor even mentioned the pending bankruptcy case; she only acknowledged the existence of the bankruptcy proceeding *after* Defendant filed its motion to dismiss for lack of standing.  Third, even in response to Defendant's motion to dismiss, Plaintiff failed to offer an affidavit that the suit is brought on behalf of the estate, to move to amend the Complaint to bring the suit on behalf of the estate, or to otherwise ensure that the suit is being brought on behalf of the estate.  Fourth, the fact that Plaintiff has provided only the barest of notice regarding this case to the bankruptcy court (neither providing any case identifying information nor even an expected recovery in her amended Schedule B) even after Defendant moved to dismiss for lack of standing suggests she is not suing on behalf of the estate.  Pl. Ex. 1 at 2, ECF No. 45-1.

## IV.   CONCLUSION

For the above reasons, the Court finds Plaintiff has standing to bring this suit on behalf of the estate.  However, the Court is not convinced Plaintiff brings this suit on behalf of the estate.

Accordingly, the Court grants Plaintiff **TEN DAYS** from the date of this Opinion and Order to: (1) either amend the Complaint or provide an affidavit reflecting that this suit is brought on behalf of the estate and that, in accordance with ¶ 1 of her approved plan, any proceeds from this suit will be submitted to the

---

[2] The Court may take judicial notice of the filings in Plaintiff's bankruptcy case without converting the motion to dismiss into a motion for summary judgment. *Harchar*, 371 B.R. at 263.

supervision and control of the trustee or will be submitted in accordance with any subsequent order from the bankruptcy court; and (2) provide a proof of filing with the bankruptcy court a notice of this pending lawsuit, which notifies the bankruptcy court of the title, case number, nature of suit, and expected recovery in this case.  Such notice shall further specifically move the bankruptcy court for a determination under § 1325(c) whether any proceeds from this suit shall be directed toward creditors in the bankruptcy action or whether the bankruptcy plan shall otherwise be modified to account for any potential recovery from this lawsuit.

Plaintiff's failure to satisfy **BOTH** requirements within the allotted time will result in a dismissal of this case without prejudice for lack of standing.  Should Plaintiff make the required filings, the Court will proceed to rule on Defendant's motion for judgment on the pleadings.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT